**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| **WILLIAM I. RAMMELSBERG**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**CAROLYN W. COLVIN, Commissioner of Social Security,**<br><br>**Defendant.** | **No. C13-0027**<br><br>**RULING ON JUDICIAL REVIEW** |

---

**TABLE OF CONTENTS**

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.* *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV.* *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*A.* *Rammelsberg's Education and Employment Background* . . . . . . . . . 5
*B.* *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 6
*1.* *Rammelsberg's Testimony* . . . . . . . . . . . . . . . . . . . . . . 6
*2.* *Vocational Expert Testimony* . . . . . . . . . . . . . . . . . . . . 7
*C.* *Rammelsberg's Medical History* . . . . . . . . . . . . . . . . . . . . . . 7

*V.* *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
*A.* *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . 10
*B.* *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . 12
*1.* *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 13
*2.* *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## *I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff William I. Rammelsberg on March 27, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Rammelsberg asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Rammelsberg requests the Court to remand this matter for further proceedings.

## *II. PROCEDURAL BACKGROUND*

On March 10, 2010, Rammelsberg applied for both disability insurance benefits and SSI benefits. In his applications, Rammelsberg alleged an inability to work since May 1, 2004 due to depression and ADHD.[1] Rammelsberg's applications were denied on May

---

[1] Prior to filing the instant applications for disability benefits and SSI benefits which are currently under review, Rammelsberg previously filed applications for both types of benefits on May 12, 2004. *See* Administrative Record at 11. Those applications were denied initially, and then at the reconsideration level on December 10, 2004. *See id.* at 159. Rammelsberg did not appeal the December 2004 denials of benefits. Thus, the relevant time period for consideration of Rammelsberg's claims currently under review begins on December 11, 2004, the day after the last final decision of his previous claims. *See id.* at 11 ("[Rammelsberg's] request for hearing as it relates to the period of time on or before December 10, 2004 is dismissed pursuant to the doctrine of res judicata (20 CFR 404.957(c)(1) and 416.1457(c)(1)). Any discussion of evidence created prior to the adjudication of December 10, 2004 is limited to the purpose of providing a foundation to consider [Rammelsberg's] credibility regarding current disability status. Such discussion is not an implied reopening. Therefore, the earliest date for current consideration is December 11, 2004."); *see also Boock v. Shalala*, 48 F.3d 348, 351 (8th Cir. 1995) ("It is well-settled that the Secretary's refusal to reopen an administratively final decision under 20 C.F.R. § 404.988 is not a 'final decision . . . made after a hearing' subject to judicial (continued...)

4, 2010. On July 30, 2010, his applications were denied on reconsideration. On September 28, 2010, Rammelsberg requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 20, 2011, Rammelsberg appeared via video conference with his attorney before ALJ Jo Ann L. Draper for an administrative hearing. Rammelsberg and vocational expert Elizabeth Albrecht testified at the hearing. In a decision dated February 10, 2012, the ALJ denied Rammelsberg's claims. The ALJ determined that Rammelsberg was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing his past relevant work as a dishwasher or inventory clerk. Rammelsberg appealed the ALJ's decision. On January 23, 2013, the Appeals Council denied Rammelsberg's request for review. Consequently, the ALJ's December 20, 2011 decision was adopted as the Commissioner's final decision.

On March 27, 2013, Rammelsberg filed this action for judicial review. The Commissioner filed an Answer on June 27, 2013. On July 29, 2013, Rammelsberg filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a dishwasher or inventory clerk. On September 24, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 30, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

---

[1](...continued)
review under § 405(g)." (Citations omitted)). Rammelsberg does not challenge the ALJ's disability onset determination, and the Commissioner agrees that Rammelsberg's disability onset date should be December 11, 2004. *See* Commissioner's Brief (docket number 11) at 4, n.1. Accordingly, for purposes of the this appeal, the Court will consider December 11, 2004 to be Rammelsberg's disability onset date.

## *III. PRINCIPLES OF REVIEW*

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that

decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## *IV. FACTS*

### *A. Rammelsberg's Education and Employment Background*

Rammelsberg was born in 1973. He is a high school graduate. While in high school, Rammelsberg was placed in special education and behavioral classrooms for

difficulties with attention and getting along with other students and teachers. Rammelsberg also testified that he studied for two years at a community college and earned at CET in communication electronics. During his time in community college, Rammelsberg received help from tutors in order to keep up with school work.

The record contains a detailed earnings report for Rammelsberg. The report covers the time period of 1990 to 2011. Rammelsberg had minimal earnings in 1990 (less than $300). From 1991 to 1996, he earned between $3,745.18 (1991) and $9,555.79 (1995). He had no earnings in 1997. From 1998 to 2005, Rammelsberg earned between $2,972.93 (2005) and $16,061.97 (2000). He had no earnings in 2006 and 2007, and only minimal earnings in 2008 and 2009 (less than $850 in both years). He has no earnings since 2010.

### *B. Administrative Hearing Testimony*

#### *1. Rammelsberg's Testimony*

At the administrative hearing, Rammelsberg's attorney asked Rammelsberg to discuss his difficulties with getting along with other people:

> Q: What was the hardest part of that college for you? What was the worst part?
> A: The people.
> Q: Just dealing [with] people?
> A: Yeah. I don't do good with people for more than five minutes or so.
> Q: Okay. And that relates to way back when you were even in -- a youngster?
> A: Yes. That's why, I don't know, I just never get along with people for more than five or ten minutes at a time.
> Q: Has that happen -- has that been a problem on any of the jobs that you've had?
> A: All of them. All of them.
> Q: What happens typically?
> A: Usually I say or do something and get in trouble and get fired.
> Q: You've been terminated from all the different jobs that were listed we saw?

A: Yes.
Q: Okay.
A: Or at least 90 percent of them.

(Administrative Record at 30-31.) Rammelsberg also indicated that he is easily distracted and has difficulty concentrating on more than one thing at a time.

*2. Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who:

> has no exertional limitations, however, this individual would be precluded from performing highly detailed, highly complex work. This individual should have no interaction with the public and only occasional interaction [with] coworkers.

(Administrative Record at 44.) The vocational expert testified that under such limitations, Rammelsberg could perform his past work as a dishwasher and inventory clerk.

*C. Rammelsberg's Medical History*

On April 1, 2010, Rammelsberg was referred to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. At the evaluation, Rammelsberg informed Dr. Stientjes that he applied for disability benefits based on "trouble with people," depression, and ADHD. Upon examination, Dr. Stientjes diagnosed Rammelsberg with ADHD, combined with untreated dysthymia. Dr. Stientjes opined that:

> [Rammelsberg] can understand and remember simple oral and written instructions. Carryover from one day to the next will be idiosyncratic, depending upon appropriate prompts. He will elicit a high degree of vigilance because of his manner. Safety judgment is minimally intact but not appropriate for operation of equipment due to inattentiveness and impulsivity. Response to workplace changes will require more than typical reminders and external structure.

(Administrative Record at 278.) Dr. Stientjes concluded that:

> [Rammelsberg] reported a difficult childhood and essentially grew up in residential placements. Development of academic

> skills was adequate. He has long been identified with ADHD that is currently untreated. He has likely been dysthymic throughout his life but has little interest in seeking treatment. Prospects for sustained gainful employment are poor but he should be able to maintain continued partial employment.

(Administrative Record at 279.)

On May 4, 2010, Dr. Dee Wright, Ph.D., reviewed Rammelsberg's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Rammelsberg. On the psychiatric review technique assessment, Dr. Wright diagnosed Rammelsberg with ADHD and dysthymia. Dr. Wright determined that Rammelsberg had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Rammelsberg was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others. Dr. Wright concluded that Rammelsberg "would be capable of simple, routine work but would probably perform better in situations where there was little interaction with other employees."[2]

On May 18, 2010, Rammelsberg met with Dr. Ali Safdar, M.D., for an initial evaluation at the Abbe Center for Community Mental Health in Cedar Rapids, Iowa. In

---

[2] Administrative Record at 282.

speaking with Dr. Safdar, Rammelsberg reported that "he hasn't had a job for a long time. Traditionally, he has had a lot of problems saying or doing things, getting pissed off or pissing somebody else off because of his impulsive behavior."[3] In assessing Rammelsberg's mental status, Dr. Safdar determined:

> [Rammelsberg] reports some attention, concentration and impulsivity problems. He reports getting bored and getting pissed off easy. He said he gets between 2 and 4 hours of sleep. He said that 2 hours work well for him[.] . . . He reports having some anger control problems. Memory is intact. He reports getting a little depressed and nervous at times. . . . Insight is minimal. Intelligence seems to be average.

(Administrative Record at 304.) Upon examination, Dr. Safdar diagnosed Rammelsberg with ADHD, depressive disorder, and PTSD. Dr. Safdar recommended medication and therapy as treatment.

On July 29, 2010, Dr. Carole Kazmierski, Ph.D., reviewed Rammelsberg's medical records and provided DDS with a mental RFC assessment for Rammelsberg. Dr. Kazmierski determined that Rammelsberg was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Kazmierski concluded that:

---

[3] *Id.* at 303.

> Although [Rammelsberg] reports a history of interpersonal difficulties, he acknowledges that he can get along with authority figures if he deals with them in short increments. While he is ill suited for jobs requiring well honed interpersonal skills, he can tolerate brief, superficial interactions with others when it is in his own interests to do so. He is capable of understanding and remembering simple instructions and can perform a range of simple, routine tasks of an unskilled nature.

(Administrative Record at 308.)

## *V. CONCLUSIONS OF LAW*

### *A. ALJ's Disability Determination*

The ALJ determined that Rammelsberg is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not

disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Rammelsberg had not engaged in substantial gainful activity since May 1, 2004.[4] At the second step, the ALJ concluded from the medical evidence that Rammelsberg has the following severe impairments: ADHD, depression, and PTSD. At the third step, the ALJ found that Rammelsberg did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Rammelsberg's RFC as follows:

> [Rammelsberg] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: precluded from performing highly detailed, highly complex work; no interaction with the public; and only occasional interaction with coworkers.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Rammelsberg was capable of performing his past relevant work as a dishwasher or inventory clerk. Therefore, the ALJ concluded that Rammelsberg was not disabled.

### *B. Objections Raised By Claimant*

Rammelsberg argues that the ALJ erred in two respects. First, Rammelsberg argues that the ALJ failed to properly evaluate his subjective allegations of disability. Second, Rammelsberg argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include all of his functional limitations in the RFC assessment.

---

[4] It is unclear why the ALJ determined May 1, 2004 as Rammelsberg's disability onset date when earlier in her decision she correctly explained that his disability onset date should be December 11, 2004, the day after the last final decision of his previous claims. *See* Administrative Record at 11; *see also* footnote 2 above. Nevertheless, as explained in footnote 2 of this decision, for purposes of Rammelsberg's appeal, the Court considers December 11, 2004 to be his actual disability onset date.

### *1. Credibility Determination*

Rammelsberg argues that the ALJ failed to properly evaluate his subjective allegations of disability. Rammelsberg maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Rammelsberg's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for

discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Rammelsberg's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Rammelsberg's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. Evidence shows a range of daily activities including cleaning, laundry, running errands, playing computer games, yard work, reading, watching television, and repair[ing] small machinery. He does odd jobs occasionally for others, but mainly has problems with interpersonal relationships on the job. [Rammelsberg] has refused to take medication even though he has admitted it helped in the past,

> particularly with attention and concentration. Therapy notes indicate [Rammelsberg] had reached maximum benefit with some improvement in relationship and anger control skills as evidenced by improved GAF scores. Evidence shows significant gaps in treatment during the relevant period. [Rammelsberg] has admitted certain abilities which provide support for part of the residual functional capacity conclusion in this decision.

(Administrative Record at 17.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Rammelsberg's treatment history, medical history, functional restrictions, activities of daily living, and effectiveness of medications in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Rammelsberg's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Rammelsberg's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

*2. RFC Assessment*

Rammelsberg argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of his functional limitations.

Specifically, Rammelsberg argues that when determining his RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations caused by his mental health problems. For example, Rammelsberg points out that a consultative examining doctor, Dr. Stientjes, opined that his prospects for "sustained gainful employment are poor but he should be able to maintain continued partial employment."[5] Rammelsberg also argues that even though the ALJ gave great weight to the non-examining agency doctors, she failed to include or explain her reasons for not including a limitation on his ability to interact with co-workers.[6] Rammelsberg maintains that this matter should be remanded for further development of his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some

[5] Administrative Record at 279.

[6] *See* Rammelsberg's Brief (docket number 9) at 9 (providing his argument with regard to limitation on interaction with co-workers by non-examining agency consultative doctor).

support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Here, the ALJ's RFC assessment for Rammelsberg precludes him from "performing highly detailed, highly complex work; no interaction with the public; and only occasional interaction with coworkers."[7] In addressing the opinions of Dr. Stientjes, the ALJ noted that:

> [Dr. Stientjes found Rammelsberg] had no recent treatment or medications. Development of academic skills appeared adequate. [Rammelsberg] was oriented to time, place, and person and endorsed irritability and problems dealing with people. . . . The psychologist indicated [Rammelsberg] appeared capable of simple, routine work, but would probably perform better in situations where there was little interaction with other employees. [Rammelsberg] was not interested in seeking treatment although he reported doing better in the past when receiving treatment.

[7] Administrative Record at 15.

(Administrative Record at 16-17.) It is clear that the ALJ's RFC assessment and her consideration of Dr. Stientjes' opinions are consistent, except that the ALJ ignores Dr. Stientjes' opinion that he is unlikely to sustain full-time employment. Because "'a treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination,'" the Court is unconvinced by Rammelsberg's argument with regard to the opinions of Dr. Stientjes. *Perkins v. Astrue*, 648 F.3d 892, 898 (8th Cir. 2011) (quoting *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007)); *see also Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (providing that in his or her decision, an ALJ who addresses some of a doctor's opinions but not all of his or her opinions suggests that the ALJ considered and rejected those portions of the doctor's opinions that were omitted from the ALJ's decision). As to Rammelsberg's complaint that the ALJ did not include the non-examining agency doctor's limitation on his ability to interact with co-workers in her decision, the Court finds that this argument is without merit. The ALJ *did* include a limitation on Rammelsberg's ability to interact with co-workers. Specifically, the ALJ limited Rammelsberg to only "occasional interaction with coworkers."[8]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Rammelsberg's medical records, observations of treating and non-treating physicians, and Rammelsberg's own description of his limitations in making his RFC assessment for Rammelsberg.[9] Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a

---

[8] Administrative Record at 15.

[9] *See* Administrative Record at 15-18 (providing a thorough and detailed discussion of the relevant evidence for making a proper RFC determination).

proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Rammelsberg's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## *VI. CONCLUSION*

The Court finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Rammelsberg. The Court also finds that the ALJ properly determined Rammelsberg's credibility with regard to his subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 23rd day of December, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA